DON BURTON, INC. and Don Burton, Individually, Plaintiffs-Appellees,

v.

AETNA LIFE & CASUALTY COMPANY, Defendant-Appellant.

No. 76–1830.

United States Court of Appeals, Ninth Circuit.

March 23, 1978.

Rehearing and Rehearing En Banc Denied May 26, 1978.

---

Scott Conley (argued), San Francisco, Cal., for defendant-appellant.

James A. Richman (argued), San Francisco, Cal., for plaintiffs-appellees.

Before WALLACE and SNEED, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge:

On July 1, 1973, a shoe store owned by Don Burton, Inc., a California corporation, and operated by Don Burton, the individual plaintiff below, burned down.[1] This was one of several retail shoe stores operated by Burton in the Sacramento area. At the time of the fire, insurance policies issued by Aetna Life & Casualty Company ("Aetna"), a Connecticut corporation, were in effect, covering the stock, equipment, fixtures, and personal property at the various locations in which Burton conducted business. Aetna assigned a claims representative to the case and a timely proof of loss was filed by Burton on August 31, 1973. Because of certain unresolved disputes over substantiation and documentation of the claims and the effect of a requested, but apparently unexecuted[2] reduction of the policy limits by the insured from $115,000 to $3,500 in

---

* Hon. Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. Mr. Burton was the president of Don Burton, Inc. and the owner of 51 per cent of its common stock; the remaining 49 per cent was owned by his sister, Joyce Duffy. As there is no substantial distinction to be drawn between Don Burton, Inc. and Don Burton the individual for purposes of the issues discussed upon this appeal, they will be referred to hereafter jointly

as Don Burton, unless the context indicates otherwise.

2. In part due to administrative delays in the processing of this requested reduction by Aetna, the confirming endorsement was not prepared until July 2, 1973, the day after the fire, at which point the insured refused to sign it. On May 12, 1975, the trial court granted a motion for partial summary judgment in favor of the insured on this issue, ruling that the parole request for reduction in coverage was

the month prior to the fire, Aetna withheld payment on the claim.

This action was commenced in the Municipal Court of the State of California when the insured's brokerage filed a claim against Burton for premiums owing. In a cross-complaint against Aetna, Burton sued for actual damages under his policies, consequential damages arising out of Aetna's failure to pay the claim promptly, and punitive damages for Aetna's alleged breach of its duty of good faith and fair dealing. The claims by and against the brokerage were subsequently severed and dismissed, and, the requisite diversity of citizenship being created among the parties, a petition for removal of the action was filed by Aetna on January 17, 1975.

The case was tried to a jury in the United States District Court for the Eastern District of California on November 7, 1975. On February 3, 1976, after a bitterly contested trial lasting thirty-four days,[3] the jury returned a verdict for the plaintiff insured amounting to almost $600,000. The amount adjudged due under the policy totaled $69,973.50, to which was added consequential damages of $200,333, and punitive damages of $300,000. Aetna filed its notice of appeal from this judgment on April 2, 1976, alleging a number of errors by the trial court. We need not pursue our scrutiny of all of them inasmuch as we are arrested at the threshold by an error which necessitates a reversal of the judgment.

## THE DEFENSE OF ARSON

Appellant cites as error the district court's refusal to give the entirety of its requested instructions on its affirmative defense of arson. This defense was raised in appellant's answer to Burton's cross complaint in the state court, which stated, upon information and belief, that "the fire referred to in the complaint was incendiary in origin, and that the cross complainant was somehow responsible for the set fire." A substantial part of the insurer's case in this lengthy trial was devoted to establishing the defense of arson.

Appellant's requested instructions on the issue of arson read as follows:

> An intentional burning by a person or persons acting for or on behalf or under the control of the plaintiff insured is sufficient to defeat the claim of the insured. I instruct you that while the burden of proof is upon the insurer to establish that a person or persons acting for and on behalf or under control of the plaintiff insured intentionally set the fire mentioned in the evidence, nevertheless you are instructed that this fact does not need to be established beyond a reasonable doubt, but it is sufficient that it be established by the greater weight of the evidence.

In giving these instructions the court struck the phrases "by a person or persons acting for or on behalf of or under the control of [the plaintiff insured]". Proper exceptions to these deletions were taken by counsel for appellant, and the colloquy between court and counsel at this point is set forth in the margin.[4]

The instructions relevant to the defense of arson as ultimately given read as follows:

> MR. BECKER [for appellant]: I take exception, for the record, Your Honor, on the ground that it is not necessary to defeat a claim on the basis of arson if the act of arson is committed by somebody who acts at the behest of or with the ratification of the insured. I believe the jury has facts before it in this case from which it can infer that the fire here was committed at the behest of or with the ratification of the insured but actually committed by somebody else.
>
> THE COURT: Your position on that, Mr. Castro?
>
> MR. CASTRO [for appellee]: · I feel that the instruction is too broad, as I commented earlier on another instruction. The instruction was to

---

legally ineffective. We are not persuaded that this ruling was incorrect.

**3.** Unfortunately, the trial was interrupted for thirty-one days because of the Christmas holidays and the judge's commitments in other matters.

**4.** [THE COURT]: Defendant's Instruction No. 30 will be given as modified. It will be given as follows: "An intentional burning by the plaintiff insured is sufficient to defeat the claim of the insured." I struck: "A person or persons acting for or on behalf of or under the control of."

The defendant has the burden of proof on the following issues:

One, that the fire mentioned in evidence was in fact incendiary, that is, a set fire.

Two, that, when considering all the evidence, the fire was set by plaintiff Don Burton.

\*   \*   \*   \*   \*   \*

Concealment, misrepresentation or fraud as to a loss is provable by circumstantial evidence, that is, by inference reasonably deductible from facts proven, and this is so because the law recognizes the intrinsic difficulty of establishing such a concealment, misrepresentation or fraud by direct evidence, as a person who sets a fire to a building usually plans and executes his plan with stealth and secrecy. Consequently, all of the circumstances, preceding and surrounding the origin of the fire of July 1, 1973 as well as the aftermath to the fire should be considered by you.

An intentional burning by the plaintiff insured is sufficient to defeat the claim of the insured.

I instruct you that while the burden of proof is upon the insurer to establish that plaintiff insured intentionally set the fire mentioned in the evidence, nevertheless you are instructed that this fact does not need to be established beyond a reasonable doubt, but it is sufficient that it be established by the preponderance of the evidence.

In order to establish that the fire of July 1, 1973, was a set fire, the defendant is not required to establish the exact method by which the fire started.

In determining whether or not a fire is incendiary, you may consider such factors as the pattern of the burn, the nature and the course of the spread of the fire, rapidity of the spread of the fire, and the testimony of experts.

A conspiracy is a combination of two or more persons to accomplish by concerted action a criminal or unlawful purpose or a lawful purpose by a criminal or unlawful means.

■ It is beyond dispute that under the substantive law of the State of California an insurer is not required to establish that the insured personally set the fire in question in order to prevail on its affirmative defense of intentional burning. Section 533 of the California Insurance Code provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . . .". This is but a codification of the jurisprudential maxim that no man shall profit from his own wrong. A person who "burns or causes to be burned or who aids, counsels or procures the burning of any . . . building" may be convicted of the crime of arson. California Penal Code § 448a. It is clear that a defendant need not be actually present at the time of the commission of the offense in order to aid and abet its commission. *People v. Sherman*, 97 Cal.App.2d 245, 217 P.2d 715, 721 (1950). Unsurprisingly, the notion that a defense of arson can be defeated by a failure to prove that the insured himself was the incendiarist is not supported by any authority to which our attention has been

---

the effect that arson or fraud will defeat the entire claim of the insured. The intentional burning, I believe, will only go to the acts on the policy but not to the acts for breach of—

THE COURT: What about persons acting for or under his control?

MR. CASTRO: When you are charging persons acting for or under his control, you have to have some evidence in the record charging conspiracy. There's certainly no evidence in this.

THE COURT: It's not in the pleading either?

MR. CASTRO: No.

THE COURT: I'm going to give it as modified.

Instruction No. 31 of the defendant's I will give as modified.

MR. BECKER: Your Honor, I take exception on the same basis just given to Instruction 30.

THE COURT: Okay. Instruction No. 34 I will give.

MR. BECKER: Incidentally, Your Honor, I believe that the pleadings do raise the phrase that you have struck out from the instructions. I believe our answer does. raise that phrase.

THE COURT: Persons acting on his behalf?

MR. BECKER: Yes, or words of similar import.

THE COURT: Well, I see nothing in the evidence. I'll give the instruction.

drawn and we have been unable to find any.

■ In declining Aetna's instructions the trial court effectively truncated the defense of arson. The uncontradicted testimony that the insured was at home at the time of the fire in effect removed the defense from the case under the given instructions requiring a finding that Burton was himself the arsonist. While the proffered instructions were arguably too broad, seeking to hold the insured responsible for acts done by others "for or on [his] behalf"—*see, e. g., Nuffer v. Ins. Co. of North America,* 236 Cal.App.2d 349, 354, 45 Cal.Rptr. 918 (1965), *Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange,* 267 Cal.App.2d 381, 73 Cal. Rptr. 182 (1968), the trial court was certainly put on notice of the deficiency in its charge in the colloquy set forth in footnote 4, *supra.* We disagree with appellee's contention that the one-sentence definition of conspiracy [5] coming later in the charge was sufficient to cure this deficiency. In short, the jury was never properly instructed that the defense of arson could be sustained if the insured had aided, abetted, or procured the setting of the fire.

■ The more significant inquiry here is whether sufficient evidence of Don Burton's implication in the fire had been adduced at trial to warrant the submission of the issue of arson to the jury. While it is unnecessary to give instructions unsupported by the evidence, a litigant is entitled to have the jury charged concerning his theory of the case if there is any direct or circumstantial evidence to support it. *See, e. g., Strudl v. American Family Mutual Insurance Co.,* 536 F.2d 242, 246 (8th Cir. 1976); *Blassingill v. Waterman Steamship Corp.,* 336 F.2d 367, 368 (9th Cir. 1964). A failure so to charge is, in effect, tantamount to directing a verdict for the opposing party on the disputed issue. The giving or denial of instructions in a diversity action is tested under federal law, *Lupton v. Torbey,* 548 F.2d 316, 320 (10th Cir. 1977),

and federal law supplies the standard applicable to the determination of evidentiary sufficiency. *Midland Insurance Co. v. Markel Service, Inc.,* 548 F.2d 603, 606 (5th Cir. 1977); *United Telecommunications, Inc. v. American Television & Communications Corp.,* 536 F.2d 1310, 1315 (10th Cir. 1976). The standard in our Circuit, as expressed in recent decisions of this Court, is "whether or not, viewing the evidence as a whole, 'there is substantial evidence present that could support a finding, by reasonable jurors, for the nonmoving party'". *Quichocho v. Kelvinator Corp.,* 546 F.2d 812, 813 (9th Cir. 1976), *quoting Chisholm Bros. Farm Equipment Co. v. International Harvester Co.,* 498 F.2d 1137, 1140 (9th Cir.), *cert. denied,* 419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 298 (1974). *See also United California Bank v. THC Financial Corp.,* 557 F.2d 1351, 1356 (9th Cir. 1977). In making this determination, the non-moving party is entitled to benefit from all reasonable inferences to be drawn from its evidence. *Westinghouse Electric Corp. v. CX Processing Laboratories,* 523 F.2d 668, 673 (9th Cir. 1975).

Direct proof of arson is seldom available, so the courts have recognized that it can be established, in proper cases, by circumstantial evidence. *Gregory's Continental Coiffures & Boutique v. St. Paul Fire & Marine Insurance Co.,* 536 F.2d 1187, 1191 (7th Cir. 1976); *Harris v. Zurich Insurance Co.,* 527 F.2d 528, 530–531 (8th Cir. 1975); *Elgi Holding, Inc. v. Insurance Company of North America,* 511 F.2d 957, 959 (2nd Cir. 1975); *Crown Colony Distributors, Inc. v. United States Fire Insurance Co.,* 510 F.2d 544, 545 (5th Cir. 1975); *Boone v. Royal Indemnity Co.,* 460 F.2d 26, 29 (10th Cir. 1972); *Jamaica Time Petroleum, Inc. v. Federal Insurance Co.,* 366 F.2d 156, 157 (10th Cir. 1966); *People v. Blankenship,* 7 Cal.App.3d 305, 86 Cal.Rptr. 651, 656 (1970); *Pacific Insurance Co. of New York v. Frank,* 452 P.2d 794, 796 (Okl.1969).

---

**5.** This sentence appears as the final paragraph of the above quoted instructions on the defense of arson.

There was circumstantial evidence that the fire here in question was of incendiary origin. The fire was reported in the early hours of a Sunday morning and the firemen responding to the blaze discovered it to be located in the basement of the building, the front and back doors of which were locked. Appellant presented two experts who testified with respect to the origin of the fire. One of them, Larry Heselton, a fire investigator for the Sacramento Fire Department, expressed the opinion that the fire was the result of arson. He ruled out any accidental causes for the fire such as electricity, gas, or spontaneous combustion. He found five separate points of origin with V-shaped patterns, indicating that the fire was set in shelving along the west wall of the basement. Mr. C. W. Holmes, a fire investigation expert with impressive credentials and long experience, also expressed the opinion that the fire in question was the result of arson and he, too, ruled out any mechanical or accidental causes for the fire. The places at which the heat and flames had originated, the pattern and direction of the burning, the heat thereby generated and the nature of the debris, all indicated to him that the fire had been set.

Appellant also introduced ample evidence of motive on the part of the insured to set the fire or cause it to be set. There appeared to be little dispute at the trial that his corporation was in serious financial trouble. For a substantial period prior to the date of the fire Burton was insolvent and unable to meet business obligations as they became due. Substantial amounts of money totaling several hundreds of thousands of dollars were due to creditors and Burton was in a very unfavorable credit posture with respect to his principal supplier. Less than a month before the fire Burton had signed an agreement to liquidate and terminate Don Burton, Inc. and to permit the proceeds of the liquidation to be paid over to creditors. An intensive sale of the entire Burton inventory conducted under the licensing and inspection procedures of the City of Sacramento and supervised by its chief supplier and creditor, U.S. Shoe, was a failure and had to be abandoned. The store at which the fire occurred was actually shut down and closed about a week before the fire. Shortly before the fire, substantial transfers of merchandise were made from the K Street store to Burton's other stores and the inventory on hand at the time of the fire was characterized by one witness as "dreck" (old, outmoded and unsaleable shoes).

Only Burton and persons who were privy to him by employment or family relationship were known to have possessed keys to the store or have been present on the premises immediately prior to the fire. Moreover, there was significant testimony from Roberta Parks, a former wife of the insured, who manifested some familiarity with the premises in question and with the business of her ex-husband, to the effect that Burton had told her that "the best thing that could every happen to me is that I would have a fire." Burton, of course, denied that he had any role in the fire. The jury, however, could choose to disbelieve his denial of complicity. *Elgi Holding, Inc. v. Insurance Company of North America, supra,* at 959.

We do not mean to imply that the evidence we have outlined was undisputed. What we wish to emphasize is that the evidence presented a triable issue of fact. We are satisfied that a reasonable jury could have concluded that it was more likely than not that the fire was the result of incendiarism caused or participated in by the insured. The failure of the district court properly to charge that this factual conclusion would require them to reach a verdict for the appellant insurance company—a failure which was exploited by the insured's counsel at several points in his closing statement[6]—cannot therefore be

---

6. The defendant has set up what comes down to two defenses. One, that the fire was claimed to be an arson fire, and, two, that it was set by Mr. Burton.

\* \* \* \* \* \*

. . . if you find that [the fire] was set and that the evidence does not preponderate that it was set by Don Burton, the ballgame is over as

said to have been harmless error. Consequently, we are compelled to reverse the judgment below and remand this matter for a new trial.

 The foregoing analysis renders unnecessary any discussion of the other issues raised by Aetna on this appeal. However, we think it could be helpful to the district court on remand to have an expression of our views with respect to one other matter. Although there may have been sufficient evidence of a causal relationship between Aetna's refusal to pay and Burton's post-fire business problems to support a jury award of some consequential damages, we believe it was error to have instructed the jury that it could consider the loss of gross profits in determining the amount of its verdict. Where, as here, a business is terminated, rather than simply interrupted, and operating expenses consequently cease, net, and not gross, anticipated profits state the correct measure of damages. *Hunt Foods v. Phillips*, 248 F.2d 23, 33 (9th Cir. 1957). We see no reason why this rule should be different in a tort case from that in a contract situation. The close similarity between Burton's alleged annual gross profits ($200,000) and the amount of consequential damages awarded ($200,333) suggests that the jury may well have been influenced by this improper instruction.

Reversed and remanded for a new trial and further proceedings consonant with this opinion.

---

dispute [*sic*] there, you only go then to the point of damage.

\* \* \* \* \* \*

Not only do they have to prove this is an incendiary fire, but they have to prove it was set by Don Burton personally, the man who had not sustained a prior loss under any of their policies or under anybody else's policy.

\* \* \* \* \* \*

Aetna has to prove it's a set fire and that Don Burton set it.