738 F.2d 836
 39 Fed.R.Serv.2d 1005, 15 Fed. R. Evid. Serv. 1933
 CAMEO CONVALESCENT CENTER, INC., et al., Plaintiffs-Appellees,
v.
Darla C. SENN, Defendant-Appellant.
CAMEO CONVALESCENT CENTER, INC., Dragomir Kresovic, Borislav
Kresovic, Linda Hintz, Plaintiffs-Appellants,
v.
Donald E. PERCY, et al., Defendants-Appellees.
CAMEO CONVALESCENT CENTER, INC., Plaintiff-Appellant,
v.
Darla C. SENN, et al., Defendants-Appellees.
CAMEO CONVALESCENT CENTER, INC., et al., Plaintiffs-Appellees,
v.
Darla C. SENN, Defendant-Appellant.
 Nos. 83-1034, 83-1048, 83-1545 and 83-1672.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 28, 1983.
Decided June 29, 1984.
As Amended on Denial of Rehearing July 30, 1984.
 
 Robert M. Hesslink, Jr., Dewitt, Sundby, Huggett & Schumacher, S.C., Madison, Wis., for plaintiffs-appellees.
 Charles D. Hoornstra, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for defendant-appellant.
 Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GRANT, Senior District Judge.*
 GRANT, Senior District Judge.
 Plaintiffs-Appellants, Cameo Convalescent Center, Inc. (Cameo), and three of its officers and directors brought this action under 42 U.S.C. Sec. 1983 alleging that the defendants, officers and employees of the Wisconsin Department of Health and Human Services (WDHHS), acted individually and in concert to deprive the plaintiffs of constitutionally protected rights. For the reasons explained below, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.
 Facts
 Cameo Convalescent Center, Inc. (Cameo) is a closely held corporation in Milwaukee, Wisconsin whose primary business is operating a licensed nursing home. Nursing homes are subject to extensive federal and state regulation and in Wisconsin, the Wisconsin Department of Health and Human Services monitors the compliance of nursing homes with these federal and state regulations. This action arose by virtue of certain enforcement actions taken by the WDHHS.
 On September 19, 1978, Darla Senn, a nurse-surveyor and employee of the WDHHS, served thirty-four notices of violation (NOV) upon Cameo.[1] Thirty-one of the NOVs alleged deficiencies in Cameo's nursing program and three alleged deficiencies in Cameo's social services program. On October 17, 1978, the WDHHS imposed a plan of correction upon Cameo requiring that all the deficiencies noted by Senn be corrected within a day.[2] Despite a timely appeal of the NOVs and the plans of correction, Cameo never received a hearing within the thirty-day period required under Wisconsin law.[3]
 On October 26, 1978, Kacynski, a nurse-surveyor who had been with Senn when the thirty-four notices of violation were issued, and who was responsible for the issuance of the three social services NOVs, conducted a verification visit to determine if Cameo had complied with the plans of correction. Kacynski found that all three violations in the social services area had been corrected. On January 2, 1979, another verification visit was conducted. Of the thirty-one violations alleged by Senn, twenty-four were found to have been corrected, acceptable progress was found to have been made with respect to four, and only three remained uncorrected.
 Cameo strongly opposed the issuance of the NOVs contending that they were without merit. Cameo suggested that the NOVs had been issued in retaliation for comments Cameo had made to Wisconsin government representatives concerning what Cameo alleged to be the poor quality and biased nature of the annual nursing home surveys which the WDHHS conducted. At trial, Cameo proffered evidence that Senn, shortly after issuing the 34 NOVs, told another nurse-surveyor "You know, I intend to screw them [Cameo]." Other evidence which Cameo produced at trial showed that the WDHHS became increasingly aware that many of the NOVs issued by Senn were meritless, but the WDHHS continued to pursue them nonetheless.
 On March 21, 1979, Cameo was notified that it was being placed on the WDHHS' Suspension of Referrals list.[4] The Suspension of Referrals list (SOR list) is compiled by the WDHHS and consists of nursing homes with a certain number of uncorrected violations.[5] The legal effect of placement upon the SOR list is to preclude state social service agencies and departments from referring nursing home patients to homes on the SOR list.[6] Wisconsin law provides that no nursing home may be placed on the SOR list unless it has been afforded the opportunity for a hearing prior to its placement on the list.[7] Despite a timely appeal by Cameo, no hearing was ever held. Cameo's name appeared upon the April SOR list which was forwarded to over 600 social service departments and agencies.
 Ultimately, the NOVs issued by Senn were the subject of a stipulated settlement between Cameo and the WDHHS. Plaintiffs filed the present action alleging that as a result of defendants' action, they suffered substantial and direct economic losses, loss of business reputation and deprivations of their constitutional rights under the first, ninth and fourteenth amendments of the Constitution. A bifurcated trial was held. Prior to the end of the liability phase of the trial, the district court dismissed the individual plaintiffs. At the conclusion of the liability phase of the trial, the jury found that nurse-surveyor Darla Senn had acted with malice in preparing and prosecuting the NOVs against Cameo, and that the NOVs were prepared and prosecuted against Cameo for ulterior or improper motives. No other defendant was found liable. The jury awarded Cameo compensatory damages of $65,000 and punitive damages of $10,000. Both Cameo and Senn appeal.
 Cameo raises four issues on appeal:
 I. Whether the district court erred in declining to present plaintiffs' conspiracy theory to the jury;
 II. Whether the district court's due process instructions were erroneous;
 III. Whether the district court erred in certain evidentiary rulings and in refusing to give a missing witness instruction;
 IV. Whether the district court erred in dismissing the claims of the individual plaintiffs?
 Darla Senn raises two issues for our consideration:
 I. Whether the district court erred in entering a judgment of liability against Darla Senn based upon the special jury verdict;
 II. Whether Darla Senn is entitled to absolute immunity under Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)?
 I. Whether the district court erred in declining to present plaintiffs' conspiracy theory to the jury?
 The main thrust of plaintiffs' case was that the defendants had acted in concert to deprive the plaintiffs of constitutionally protected rights. At trial, however, no conspiracy instruction or special verdict question on conspiracy was presented to the jury. Instead, the instructions focused on individual liability. Cameo contends that it was reversible error for the district court not to have instructed the jury on its conspiracy claim.
 Where supported by sufficient evidence, a plaintiff is entitled to have the jury instructed by the Court on the theory of his case. Hallberg v. Brasher, 679 F.2d 751, 757 (8th Cir.1982); Alloy International Co. v. Hoover-NSK Bearing Company, Inc., 635 F.2d 1222, 1226 (7th Cir.1980); Brandes v. Burbank, 613 F.2d 658, 668 (7th Cir.1980); Don Burton, Inc. v. Aetna Life and Casualty Co., 575 F.2d 702, 706 (9th Cir.1978) ("[A] litigant is entitled to have the jury charged concerning his theory of the case if there is any direct or circumstantial evidence to support it.") Indeed, the failure to give an instruction, where merited, effectively directs a verdict for the opposing party on the disputed issue. Id.
 Where the issue of civil conspiracy is involved, courts must be particularly cautious. As this Court noted in Hampton v. Hanrahan:
 [T]he question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding' to achieve the conspiracy's objectives. Adickes v. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) .... When a plaintiff alleges a conspiracy to violate civil rights, '[t]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide.' Adickes, supra, 398 U.S. at 176, 90 S.Ct. at 1618 (Black, J. concurring.)
 
 
 1
 600 F.2d 600, 621 (7th Cir.1979); see also PUTMAN v. Gerloff, 701 F.2d 63, 65 (8th Cir.1983).
 
 
 2
 In Hampton, we outlined the elements of civil conspiracy:
 
 
 3
 A plaintiff seeking redress need not prove that each participant in a conspiracy knew the 'exact limits of the illegal plan or the identity of all participants therein.' Hoffman-LaRoche, Inc., supra, 447 F.2d at 875 [ (7th Cir.1971) ]. An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.' Id.
 
 
 4
 600 F.2d at 621. We noted that "[a]bsent the testimony of a co-conspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist." Id.
 
 
 5
 Applying the standards of Hampton to the present case, this Court believes that sufficient evidence was adduced at trial to merit a conspiracy instruction. Darla Senn prepared and prosecuted NOVs, most of which were meritless. Although the WDHHS became increasingly aware that many of the NOVs which Senn issued were meritless, they pursued them nonetheless. Despite a timely appeal upon notification that Cameo would be placed upon the SOR list, Cameo was placed on the April SOR list which was forwarded to over 600 social service agencies and departments. Plaintiffs proffered adequate evidence to permit a jury to infer the existence of a conspiracy and to merit a jury instruction thereon.
 
 
 6
 Our determination that plaintiffs merited a conspiracy instruction does not end our inquiry. "[A]n error in refusing to give an instruction, like any other trial error, is subject to Rule 61, Fed.R.Civ.P. If it 'does not affect the substantial rights of the parties' we are to disregard it." Alloy International Co., 635 F.2d at 1226. Defendants rely upon Beard v. Mitchell, 604 F.2d 485, 497 (7th Cir.1979) for the proposition that the district court's failure to instruct on plaintiffs' conspiracy theory did not affect the plaintiffs' substantial rights.
 
 
 7
 In Beard, this Court held that a court's failure to instruct as requested will not constitute reversible error in three situations: where the requested instruction is given in substance; where a general instruction is given without the specific theory of the case being presented and the party's theory of the case is apparent throughout the course of the trial, and finally, where the requested instruction is unsupported by the evidence adduced at trial.
 
 
 8
 None of these exceptions apply to the facts presently before this Court. The requested jury instruction was never given in substance--all the jury instructions and special verdict questions focused on individual liability, not conspiratorial liability. The second exception is likewise inapplicable. Although plaintiffs argued conspiracy during opening and closing arguments, no general instruction on conspiracy was ever provided. Arguments of counsel alone are not a substitute for proper jury instructions. Alloy International Co., 635 F.2d at 1226. Finally, as discussed previously, adequate evidence was adduced at trial to merit a conspiracy instruction.
 
 
 9
 Defendants' last argument is that the plaintiffs have waived jury instruction errors by failing to object. It is hornbook law that "... [n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection." Fed.R.Civ.P. 51. Although no stenographic transcript is available of the conference at which plaintiffs objected to the court's instructions, plaintiffs filed a statement under Fed.R.App.P. 10 preserving their objections to the district court's failure to give any of the instructions which plaintiff requested.[8] This statement was served upon opposing counsel and approved by the district court.[9] We find that this issue has been properly preserved for our consideration.[10]
 
 
 10
 Accordingly, for the reasons stated above, this Court finds that the district court erred in failing to instruct the jury on plaintiffs' conspiracy theory. Because the failure to instruct on plaintiffs' theory of the case constitutes reversible error on the facts of this case, we remand this case to the district court for a new trial which shall include instructions on plaintiffs' theory of the case.
 
 
 11
 II. Whether the district court's jury instructions on due process were erroneous?
 
 
 12
 It is axiomatic that a fundamental requirement for due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). However, mere injury to reputation, such as being placed on a blacklist, does not, without more, give rise to a cognizable due process claim under the fourteenth amendment. There must additionally be the deprivation of a "liberty" or "property" interest. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). As the Supreme Court noted in Davis, " '[P]osting,' therefore, significantly altered her status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards." Id. at 708-709, 96 S.Ct. at 1164-1165. Here, Cameo properly asserts a cognizable due process claim because Cameo's placement upon the SOR list without the requisite hearing not only damaged Cameo's reputation but also altered Cameo's legal status. Cameo's placement upon the SOR list, like the individual placed on the list of known drunks in Davis, deprived Cameo of a right under state law: the right to receive referrals from state social service departments and agencies.
 
 
 13
 Wisconsin law specifically provides that a nursing home is entitled to a hearing prior to placement on the SOR list. Wis.Stat.Ann. Sec. 50.04(4)(d). However, the district court instructions failed to inform the jury that Cameo was entitled to such hearing, but simply provided:
 
 
 14
 Due process. To recover on their claim for violation of due process, the plaintiffs, Cameo Convalescent Center, must show by a preponderance of the evidence that a defendant or defendants were personally and directly responsible for placing Cameo on the suspension of referrals list and acted with intentional disregard of Cameo's right to appeal this placement. In the alternative, plaintiffs must show that Cameo was denied a timely hearing on the Notices of Violation and the imposition of a plan of correction.
 
 
 15
 Cameo argues that the district court's instructions on due process were erroneous in two respects: they failed to explain that Cameo was entitled to a hearing prior to its placement on the SOR list, and they failed to inform the jury that the deprivation of Cameo's due process rights could be accomplished by reckless as well as by intentional conduct.
 
 
 16
 Defendants state that there was no need to inform the jury that Cameo was entitled to a hearing prior to placement on the SOR list because it is undisputed that Cameo did not receive the hearing to which they were entitled. Defendants argue that the only jury issue was one of legal responsibility, i.e., which, if any, of the defendants was responsible for Cameo's denial of due process.
 
 
 17
 We think that the jury instructions should have informed the jury that Cameo was entitled to a hearing prior to placement on the list. Although this issue was not disputed, the jury could not determine whether Cameo's due process rights were violated by the defendants unless it was aware that those rights included a hearing prior to placement on the SOR list. On remand, the jury instructions on due process must inform the jury of Cameo's right to a hearing prior to placement on the SOR list.
 
 
 18
 Cameo also argues that the due process jury instructions failed to inform the jury that Cameo's rights could be violated by reckless as well as by intentional conduct. While the district court's instructions stated that Cameo must prove that the defendants "acted with intentional disregard of Cameo's right to appeal" its placement on the SOR list, the trial judge included a definition of "recklessly" when he instructed the jury on the meaning of intent. Additionally, the special verdict questions inquire whether any of the defendants acted with intentional or reckless disregard of Cameo's rights. Nonetheless, there is a possibility that the jury was confused by the trial judge's "intentional disregard" due process instruction and his subsequent instructions on reckless conduct. Accordingly, on remand, the trial judge will clearly instruct the jury that plaintiffs' due process rights could be violated by intentional as well as by reckless conduct. See Richardson v. City of Indianapolis, 658 F.2d 494, 502 (7th Cir.1981), cert. denied, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982).
 
 
 19
 III. Whether the district court erred in certain evidentiary rulings and in refusing to give a missing witness instruction?
 
 
 20
 At trial, Cameo introduced substantial excerpts of deposition testimony of several party-defendants pursuant to Fed.R.Civ.P. 32. Pursuant to Fed.R.Civ.P. 32(a)(4), the defendants read other portions of the deposition introduced by Cameo. Cameo contends that a substantial portion of the deposition testimony introduced by the defendants was inadmissible as irrelevant, prejudicial or hearsay.
 
 
 21
 When one party utilizes deposition testimony at trial, "an adverse party may require him to introduce any other part which ought in fairness ... be considered with the part introduced." Fed.R.Civ.P. 32(a)(4). This is the "rule of completeness" which prevents misleading impressions created by taking a statement out of context. 1 Weinstein, Weinstein's Evidence p 106 (1982). Such deposition testimony, however, is admissible only in accordance with the rules of evidence. Fed.R.Civ.P. 32(a); Reeg v. Shaughnessy, 570 F.2d 309, 316-17 (10th Cir.1978).
 
 
 22
 This Court has carefully reviewed the substantial deposition evidence introduced by the defendants and finds no reversible error. While, on occasion, evidence which was otherwise inadmissible as irrelevant, prejudicial or hearsay was introduced, such error was harmless in the context of this lengthy jury trial and did not affect the plaintiffs' substantial rights. Inasmuch as this case is being remanded for a new trial, we are confident that the district court will insure on remand that deposition testimony used in accordance with Fed.R.Civ.P. 32(a)(4) is otherwise properly admissible under the Federal Rules of Evidence.
 
 
 23
 Plaintiffs further argue that the district court abused its discretion by failing to give a missing witness instruction with respect to several party-defendants who did not testify at trial. The determination of whether a missing witness instruction should be given rests within the trial court's sound discretion. Labit v. Santa Fe Marine, Inc., 526 F.2d 961 (5th Cir.), cert. denied, 429 U.S. 827, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). Two factors convince this Court that the trial court here did not abuse its discretion in refusing to give a missing witness instruction. First, Cameo relied upon and quoted extensively from the depositions of missing witnesses. As McCormick notes, the justification for the missing witness instruction disminishes with the availability of the tools of discovery. McCormick, McCormick on Evidence Sec. 272 at 657 (2d ed. 1972). Second, and more importantly, plaintiffs commented extensively during closing arguments on the missing witnesses. For these reasons, this Court finds that the district court did not abuse its discretion in refusing to give a missing witness instruction.
 
 
 24
 IV. Whether the district court erred in dismissing the claims of the individual plaintiffs?
 
 
 25
 Prior to the end of the liability phase of the trial, the district court dismissed the claims of the individual plaintiffs, stating that such plaintiffs lacked standing because they had failed to establish any injury from the actions of the defendants. The individual plaintiffs argue that the district court erred in dismissing their claims.
 
 
 26
 It is clear that under Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the individual plaintiffs do not have a claim against the defendants unless they establish not only that the acts of one or more of the defendants caused injury to their reputation but also that the individual plaintiffs were deprived of a constitutionally protected interest by alteration of legal status. Mere loss of reputation does not implicate any liberty or property interests sufficient to establish a claim under Sec. 1983.
 
 
 27
 We agree with the district court that the individual plaintiffs have failed to establish claims cognizable under Sec. 1983. The three exhibits which plaintiffs assert establish injury to their reputation fail to name the individual plaintiffs and cannot be reasonably construed to establish damage to the individual plaintiffs' reputations. Nor do the individual plaintiffs establish any alteration of legal status. They suggest that by virtue of the meritless NOVs, they were subject to fines, forfeitures or loss of professional licenses under provisions of Wisconsin law. However, no evidence was offered to show that any fines or forfeitures were actually imposed or that any individual plaintiff actually lost his license. Finally, the individual plaintiffs suggest that the plans of correction imposed limitations on how they could pursue their chosen occupations. However, the plans of correction were imposed on Cameo, not the individual plaintiffs. Accordingly, we conclude that the individual plaintiffs were properly dismissed.
 
 Issues Raised by Darla Senn
 
 28
 This Court now addresses the two issues which Darla Senn raises on appeal. The special verdict questions submitted by the district court asked which of the defendants, if any, had prepared or prosecuted notices of violation against Cameo without probable cause or with malice; whether the notices of violation had been prepared or prosecuted for ulterior or improper motives, and if the defendants were entitled to good faith or prosecutorial immunity. The jury found that only Darla Senn had maliciously prepared and prosecuted notices of violation against Cameo, that she had done so for improper motives and that she was not entitled to good faith or prosecutorial immunity. After the damage phase of the trial was completed, the district court entered judgment against Senn for $75,000. Senn appeals, arguing that the district court erred in entering judgment against her, and that she was entitled to absolute immunity under Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).
 
 
 29
 I. Whether the district court erred in entering a judgment of liability against Darla Senn based upon the special jury verdict?
 
 
 30
 Senn contends that the district court erred in entering judgment against her because the issuance of the meritless notices of violation constitutes the common law tort of malicious prosecution, not a claim cognizable under Sec. 1983. Whether abuse of legal process or malicious prosecution rises to the level of a constitutional violation actionable under 42 U.S.C. Sec. 1983 depends upon whether, "acting under color of state law, the defendant has subjected the plaintiff to a deprivation of constitutional magnitude." Hampton v. Hanrahan, 600 F.2d at 630. However, "conduct which merely engenders common law tort liability, without infringing on constitutionally protected interests, is not a sufficient basis to support a cause of action under Section 1983." Beker Phosphate Corporation v. Muirhead, 581 F.2d 1187, 1189 (5th Cir.1978). "[T]he common law tort of misuse of legal procedure, without more, does not rise to the level of Constitutional wrong remedied by Section 1983." Id. We conclude that the district court erred in entering judgment against Senn since we find that Senn did not subject Cameo to a deprivation of constitutional magnitude.
 
 
 31
 Cameo's Sec. 1983 action arises from its placement upon the SOR list without the hearing to which it was entitled. The nexus between the infringement upon Cameo's constitutionally protected rights and Darla Senn's issuance of the NOVs is simply too attenuated to permit this Court to hold that Senn subjected, or caused Cameo to be subjected, to the deprivation of due process.[11] Between the issuance of the NOVs in September 1978 and Cameo's placement upon the SOR list in April 1979, two further verification visits of Cameo were conducted by the WDHHS, meetings were held among WDHHS officials concerning Cameo's notices of violation and most crucially, Cameo's timely appeal to its placement on the SOR list was mishandled, resulting in Cameo's placement on the SOR list. We conclude that although Senn's actions constituted abuse of process and malicious prosecution, they did not subject Cameo, or cause Cameo to be subjected, to its denial of due process, and Cameo may not proceed against Senn under Section 1983.[12]
 
 
 32
 Having found that Cameo may not pursue its rights against Senn under Section 1983, this Court finds no need to address Senn's second issue: whether she is entitled to absolute immunity under Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).
 
 Award of Attorneys' Fees to Plaintiff
 
 33
 One final issue--the calculation of attorneys' fees--remains for our consideration. Pursuant to 42 U.S.C. Sec. 1988, plaintiffs originally sought fees of $144,230.75. After consideration of the guidelines which we set forth in Waters v. Wisconsin Steel Works of International Harvester Co., 502 F.2d 1309 (7th Cir.1974), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976) and plaintiffs' limited success at trial, the district court awarded fees of $44,182. Plaintiffs contend that this award is an abuse of discretion.
 
 
 34
 It is axiomatic that only prevailing parties are entitled to fees under Sec. 1988. Blum v. Stenson, --- U.S. ----, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A party is considered to be a prevailing party if he "succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. 103 S.Ct. at 1939 citing Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978). At this stage of the litigation, it is impossible to term plaintiffs prevailing parties since, at best, all they have achieved is a new trial with proper jury instructions.
 
 
 35
 Accordingly, we set aside the district court's award of attorneys' fees, subject to reconsideration by the district court if plaintiffs prevail after a new trial. If fees are awarded, the district court shall allow compensation for reasonable law clerk and paralegal fees. Many courts have recently construed attorneys' fees to include law clerk and paralegal expenses. Laffey v. Northwest Airlines, 572 F.Supp. 354 (D.D.C.1983); Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983); Richardson v. Byrd, 709 F.2d 1016 (5th Cir.1983); Berman v. Schweiker, 531 F.Supp. 1149, 1154 (N.D.Ill.1982); Ross v. Saltmarsh, 521 F.Supp. 753, 769 (S.D.N.Y.1981). We feel that the better rule is to allow compensation for law clerks as attorneys' fees under Sec. 1988. Such a policy encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes.Conclusion
 
 
 36
 For the reasons detailed above, we AFFIRM in part, REVERSE and REMAND in part for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 A notice of violation is a legal notice informing the nursing home that it is in violation of WDHHS regulations:
 (4) NOTICE OF VIOLATION; CORRECTION. (a) Notice of Violation; 1. If upon inspection or investigation the department determines that a nursing home is in violation of this subchapter or the rules promulgated thereunder, it shall promptly serve a notice of violation upon the licensee. Each notice of violation shall be prepared in writing and shall specify the nature of the violation, and the statutory provision or rule alleged to have been violated. The notice shall inform the licensee of the right to a hearing under par. (e)....
 Wis.Stat.Ann. Sec. 50.04 (Supp.1983).
 
 
 [2]
 Upon the issuance of a NOV, the department would request a plan of correction from the nursing home explaining how the nursing home intended to remedy the deficiency. Upon Cameo's failure to submit plans of correction, the WDHHS imposed plans of correction upon Cameo. Ultimately, the WDHHS gave Cameo more time within which to comply with the plans of correction. See Wis.Stat.Ann. Sec. 50.04(4)(c)(2) (Supp.1983)
 
 
 [3]
 Id. Sec. 50.04(4)(e)
 
 
 [4]
 Id. Sec. 50.04(4)(d)
 
 
 [5]
 (d) Suspension of referrals. 1. The department shall prepare on a monthly basis a list containing the names and addresses of all nursing homes with existing class "A" violations as defined in par. (b) 1 or with 5 or more existing violations of any type, for which a plan of correction has not been timely submitted to the department under par. (c), for which a plan of correction has been disapproved or for which an approved plan of correction has not been carried out. A copy of the monthly list of violators shall be sent to each county welfare director and each s. 51.42 or 51.437 board director in the county in which each nursing home listed is located. The department shall notify each nursing home placed on the list of such placement at least 10 days prior to the issuance of the list. No nursing home may be placed on the list unless a hearing has been held under par. (e) and a final determination has been made by the department or the time for requesting a hearing has passed and no request has been made. A nursing home shall be removed from the list when all corrections are made or when a plan of correction for all deficiencies is approved by the department. The list shall indicate those nursing homes which have been removed from the list during the prior month
 
 
 [6]
 Id. Sec. 50.04(4)(d)(2)
 
 
 [7]
 Id. Sec. 50.04(4)(d)
 
 
 [8]
 Federal Rule of Appellate Procedure 10(c) and (d) provides:
 (c) Statement of the Evidence or Proceedings When no Report Was Made or When the Transcript is Unavailable. If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.
 
 
 [9]
 In pertinent part, the statement provides:
 
 
 [5]
 That at that conference a number of the proposed instructions to be given were reviewed but none were agreed to; and the Court indicated it would formulate its own instructions based on instructions presented by the parties
 
 
 [6]
 That at that conference and for the record it was understood that each of the parties were preserving their objections to the Court's failure to give any of the instructions previously offered by that party in the final instructions presented to the jury in this proceeding
 
 
 [10]
 Plaintiffs suggest that the district court improperly restricted the presentation of their conspiracy case. At trial, plaintiffs offered into evidence over three hundred exhibits, of which many were several pages long. Plaintiffs contend that the district court refused to allow any testimony about the exhibits other than foundation testimony. As a result of the district court's restrictions on plaintiffs' presentation of their exhibits, plaintiffs conclude that they were unable to fully present their case
 District courts have substantial discretion in controlling the mode and order of presenting evidence. Fed.R.Evid. 611; United States v. Ballard, 535 F.2d 400 (8th Cir.), cert. denied, 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 283 (1976); United States v. Daniels, 528 F.2d 705 (6th Cir.1976). Here plaintiffs had a full opportunity to discuss and explain the exhibits which were presented to the jury during closing arguments. The jury received an index to the exhibits introduced by plaintiffs. Accordingly, we find no abuse of discretion here.
 
 
 [11]
 This conclusion is clearly buttressed by the jury's response to special verdict question # 14:
 Number 14: Which of the following defendants, if any, were personally and directly responsible for the placement of Cameo on the Suspension of Referrals List and acted with intentional or reckless regard of Cameo's right to appeal such placement? Answer: None.
 
 
 [12]
 This Court expresses no opinion whatsoever as to whether Darla Senn may be liable under Sec. 1983 for conspiracy to violate civil rights