658 F.2d 494
 Tandy RICHARDSON, Jr., Administrator of the Estate of Byron
L. Richardson, Deceased, Plaintiff-Appellant,
v.
The CITY OF INDIANAPOLIS, A Municipal Corporation in the
State of Indiana; Marion County Sheriff's Department, Marion
County, Indiana; Mark Myler, Robert Yarnell, Schuyler Atkins
and Linden K. Lucas, Individually and as Deputy Sheriffs of
the Marion County Sheriff's Department, Marion County,
Indiana; Indianapolis Police Department, Indianapolis,
Indiana; Richard Blake, Individually and as a Police Officer
of the Police Department of the City of Indianapolis; and
Phil Smith and Robert Fouty, Individually and as Police
Officers of the Police Department of Speedway, Indiana,
Defendants-Appellees.
 No. 80-1285.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 19, 1981.
Decided Aug. 25, 1981.
 
 John O. Moss, Moss & Walton, John Preston Ward, Indianapolis, Ind., for plaintiff-appellant.
 Eugene O. Maley, Richard S. Ewing, Stewart, Irwin, Gillion, Fuller & Meyer, Indianapolis, Ind., for defendants-appellees.
 Before FAIRCHILD, PELL and SPRECHER, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 Byron L. Richardson was shot and killed in a struggle with an Indianapolis police officer in the course of his arrest following a high speed automobile chase. The plaintiff, Tandy Richardson, Jr., the decedent's personal representative, appeals from a judgment of the United States District Court for the Southern District of Indiana which granted a directed verdict against him on his claim under 42 U.S.C. § 1983, in favor of the defendants, the City of Indianapolis; the Indianapolis Police Department (I.P.D.); the Marion County Sheriff's Department; Mark Myler, Robert Yarnell, Schuyler Atkins, and Linden Lucas, individually and as Deputy Sheriffs of Marion County; Phil Smith and Robert Fouty, individually and as police officers of the Police Department of Speedway, Indiana (referred to collectively as the non-shooting defendants). The plaintiff also appeals from the directed verdict in favor of Richard Blake, as a Police Officer of Indianapolis, Indiana, and from a jury verdict in favor of the defendant Richard Blake individually (the shooting defendant).
 
 
 2
 As to the non-shooting defendants, the plaintiff contends that the trial court erred by weighing the evidence and substituting its judgment for that of the jury, and thereby removed from jury consideration questions upon which reasonable jurors could have disagreed. As to the shooting defendant Blake, the plaintiff alleges that the trial court committed several errors; first, that the court granted improperly a directed verdict in favor of Blake "as a Police Officer of the City of Indianapolis"; second, that the court wrongfully denied a directed verdict against Blake at the close of all the evidence; third, that the court improperly instructed the jury; fourth, that the court improperly refused the plaintiff's tendered jury instructions; and fifth, that the court failed to excuse a juror for cause when it should have done so. The plaintiff also contends that the trial court erred by excluding from the evidence a paternity judgment relating to the decedent's illegitimate child. The plaintiff also seeks award of attorney's fees under 42 U.S.C. § 1988.
 
 I.
 
 3
 At 1:12 a. m., May 14, 1975, Indianapolis Police Officer Richard Blake issued a speeding ticket to the decedent, Byron Richardson. Some 45 minutes later, Blake, who had remained at the same location, observed the Richardson car again speed past. Blake pursued the car, and alerted the dispatcher of the Indianapolis Police Department. This broadcast was heard by other police officers of surrounding jurisdictions who joined the pursuit, which reached speeds of up to 100 miles per hour. The pursuers attempted to slow or to stop Richardson, but he eluded them until two Sheriff's Department squad cars blocked a roadway on an exit ramp at the Indianapolis International Airport, whereupon Richardson stopped his vehicle. The pursuing vehicles surrounded Richardson's car, and several officers got out of their cars and approached cautiously. At least three of the officers had their handguns drawn. Blake and another officer ordered Richardson out of the car. He responded only by laughing. Blake and Corporal Myler of the Marion County Sheriff's Department approached the car with their guns drawn. All the other officers reholstered their guns at this point. Blake and Myler removed Richardson from the car. Blake used his left hand only, keeping his revolver, pointing skyward, in his right hand. Richardson began to struggle with the two officers. Blake's gun discharged, striking Richardson in the head. Richardson died immediately. His personal representative filed this suit alleging that the defendants had unconstitutionally deprived the decedent of his rights under color of state law in violation of 42 U.S.C. § 1983. The trial court granted a directed verdict in favor of the non-shooting defendants, and in favor of Blake as a police officer, and a jury found in favor of Blake acting as an individual. The plaintiff appeals from the judgment entered on those verdicts.
 
 II.
 
 4
 The plaintiff's first assignment of error is that the trial court improperly granted a directed verdict in favor of the non-shooting defendants and the shooting defendant in his capacity as an officer of the I.P.D. The plaintiff contends that the trial court failed to follow the proper rule concerning the grant of a directed verdict, which requires that the trial court view the evidence and make all inferences in the light most favorable to the non-moving party, and that if reasonable jurors could differ on the conclusions drawn therefrom, the case must go to the jury. See, e. g., Hampton v. Hanrahan, 600 F.2d 600, 607-08 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). While this is the proper formulation of the directed verdict standard, it is nonetheless clear that the trial judge must determine whether the party with the burden of proof has produced sufficient evidence upon which a jury could properly proceed to a verdict, and that a mere scintilla of evidence will not suffice. Hohmann v. Packard Instrument Co., 471 F.2d 815, 819 (7th Cir. 1973). Thus on appeal the party against whom a verdict has been directed has the onus of demonstrating the existence of a conflict in the evidence or the inferences to be drawn therefrom sufficient to justify submission of the question to the jury. Krivo Industrial Supply Co. v. National Distillers & Chemical Corp., 483 F.2d 1098, 1102 (5th Cir. 1973).
 
 
 5
 We turn therefore to each of the plaintiff's claims in turn to determine whether there was evidence upon which reasonable jurors could have disagreed.
 
 
 6
 The first category of issues relates to the participation in the high-speed pursuit. The plaintiff's complaint asserted that the governmental and police force defendants wrongfully failed to interrupt the high-speed chase and thereby participated in the exercise of unreasonable and excessive force in violation of the decedent's civil rights; that the City of Indianapolis and its police force wrongfully exerted such force by inviting and encouraging the other defendants to join in the chase; that the Indianapolis defendants should have known that no high-speed chase was necessary because they knew the decedent's name and address from the earlier speeding ticket and thus could have picked him up later, and that therefore the continuation of the chase was exertion of unreasonable and excessive force; that the other defendants exerted such force by joining the chase in the absence of information that a warrant was out for the defendant or that he was being pursued for the commission of a felony.
 
 
 7
 The trial court made the following findings of fact and conclusions of law on the high-speed chase issue:
 
 
 8
 while engaging in ... high speed flight decedent was pursued by multiple police officers of various police agencies in the proximity of the roads and highways used by decedent in the flight of decedent in his vehicle. During such flight the decedent committed other alleged misdemeanor traffic violations of reckless driving, speeding and failing to obey multiple police officers' orders to decedent to stop his motor vehicle.
 
 
 9
 ... It was the legal obligation of the defendant officers to arrest the decedent for the many violations of the Motor Vehicle Code of Indiana. It was the duty of the decedent to stop his vehicle when he was signaled to stop by each and all of the defendant officers. It was the duty of the defendant governmental units and agencies to instruct their employee defendant officers to pursue the decedent when he resorted to high speed evasive flight to avoid arrest for each of his crimes and for inter agency cooperation to apprehend.
 
 
 10
 No property damage or personal injuries were incurred by decedent in the defendants' pursuit of decedent in his high speed evasive flight to avoid arrest.
 
 
 11
 The court then concluded that the plaintiff had failed to prove all of the essential elements and alleged facts of the complaint as to the non-shooting defendants. We agree.
 
 
 12
 There was no evidence in the record upon which a reasonable juror could conclude that the high-speed chase was the proximate cause of any violation of the decedent's constitutional rights. The chase had terminated without injury to the decedent, before the occurrence which caused his death, and therefore no liability for participation in the chase can attach. Furthermore, there was no evidence in the record that the chase was unlawful, but rather what evidence there was established that it was appropriate under the laws of the State of Indiana and the policies of the respective defendants for the officers to pursue a person who had committed a misdemeanor in their presence, and to assist another officer in so doing, regardless of whether a warrant had been issued. Ind.Code § 18-1-11-4 (Burns). Additionally, no evidence was produced that the Indianapolis defendants invited or encouraged the other defendants to join the pursuit; what evidence there was established rather that each officer communicated only with his own dispatcher. The grant of the directed verdict was thus proper on the issue of the high-speed chase.
 
 
 13
 The next group of issues removed from jury consideration relates to the firearms policy of the defendant police departments, and the failure of the departments to discipline officers for excessive use of force. The plaintiff's brief does not raise the issue of firearms policy, and the question of discipline policy, while alluded to in the plaintiff's brief to this court, was withdrawn from consideration by the plaintiff below. We will treat neither of these issues, therefore, as neither is properly before this court.
 
 
 14
 The next group of issues relates to the negligent assignment of Officer Blake to a motor vehicle, and the negligent hiring of Deputy Sheriff Myler. The plaintiff submitted exhibits designed to prove the above, but the trial court excluded them on relevance grounds. The plaintiff has not briefed grounds before this court on which that exclusion is claimed to be erroneous. Furthermore, we need not reach the question in light of our affirmance of the district court finding that there was no evidence establishing that the chase proximately caused injury to the decedent, and therefore no reason to examine the driving records of the officers involved.
 
 
 15
 The plaintiff's next claim is that the non-shooting defendants violated the decedent's rights by failing to act affirmatively to prevent Officer Blake from shooting the decedent. This charge assumes that the shooting officer acted in a manner that violated the decedent's civil rights. The jury properly determined that issue to the contrary, however, see infra, and thus there can be no liability on the part of the non-shooters for failure to prevent what the jury determined was not a violation. We note, however, that unlike Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979), and Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972), this was not a case where there was time for the other officers to intervene, but rather presented a situation like that in Russ v. Ratliff, 538 F.2d 799 (8th Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977), where the court sustained a verdict in favor of an officer who could not have intervened because the challenged events occurred within a few seconds.
 
 
 16
 The plaintiff's final claim on the directed verdict as to the non-shooters is the claim that the defendants conspired to violate the decedent's civil rights. The plaintiff relies on language from Hampton v. Hanrahan, 600 F.2d at 620-21, to establish that such a conspiracy need not be based on an express agreement, and that its existence can be inferred from circumstantial evidence. Hampton was explicit, however, in stating precisely what elements were required to establish the existence of a civil conspiracy:
 
 
 17
 (A) combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages.'
 
 
 18
 Id. at 620-21, quoting Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir. 1973). Because the jury determined that no violation of the decedent's civil rights had taken place as to the shooting defendant, there obviously could have been no agreement to violate those rights by the non-shooting defendants. Thus, the element of infliction of a legally cognizable wrong is absent. Furthermore, as we noted above, there was no evidence of any communication between the officers which might give rise to any inference of agreement to commit any acts, wrongful or otherwise. As this court remarked in Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971),
 
 
 19
 (c)ircumstantial evidence may provide adequate proof of conspiracy. The law does not demand proof that each conspirator knew the exact limits of the illegal plan or the identity of all participants therein. But it does require that there be a single plan, the essential nature and general scope of which is known to each person who is to be held responsible for its consequences.
 
 
 20
 See Simms v. Reiner, 419 F.Supp. 468 (N.D.Ill.1976) ("Mere unsupported conclusions and inferences are insufficient to support a charge of conspiracy."). Absent any evidence of a plan to deprive the decedent of his civil rights, the conspiracy allegation could not go to the jury.
 
 
 21
 We therefore conclude that the trial court did not err in directing a verdict as to all of the non-shooting defendants.
 
 III.
 
 22
 The plaintiff further contends that the trial court erred by granting a directed verdict in favor of Officer Blake in his capacity as a Police Officer of the City of Indianapolis.
 
 
 23
 In explaining his rationale for dismissing the case against Blake in his official capacity, the trial court stated that under the rule of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1976), damages on a theory of respondeat superior could only be awarded against the City of Indianapolis or the Indianapolis Police Department if Blake had been acting pursuant to a policy, custom, or usage of the city or the department, and that the only purpose in naming Blake in his official capacity was to obtain such liability against the city or the department. The court found, however, that there was no evidence that Blake was acting pursuant to any policy or custom of the city or the department when his gun discharged, and that there had been no evidence, in fact, presented as to any policy whatsoever relating to the use of firearms. The plaintiff has presented no argument on appeal that challenges that finding, and this court has not found such evidence on review of the record. Under the Monell rule, actions for damages against a party in his official capacity are in essence actions against the governmental entity of which the officer is an agent, 436 U.S. at 690 n.55, 98 S.Ct. at 2035 n.55, and damages could only be awarded against a defendant in his official capacity if they would be available against the governmental agency itself. Id.; Familias Unidas v. Briscoe, 619 F.2d 391, 403 (5th Cir. 1980). Thus it was appropriate to limit the jury consideration of Blake's liability to the question whether he individually had violated the decedent's civil rights while acting under color of state law, i. e., clothed with the authority, but acting beyond the proper scope, of an Indianapolis police officer. Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961).
 
 IV.
 
 24
 The plaintiff further contends that the trial court erred on several grounds in rulings relating to the continuation of the trial following the grant of the directed verdict for all the defendants except Blake individually. We will examine each of those contentions in turn.
 
 
 25
 The plaintiff claims the trial court erred by refusing to grant a directed verdict against Blake at the close of the evidence on a theory that his use of his gun was excessive force. Keeping in mind the rule that such a verdict is only appropriate when the evidence, viewed in the light most favorable to the non-moving party, is such that reasonable jurors could not differ on the conclusion of the issue, Hohmann v. Packard Instrument Co., 471 F.2d at 819, we must affirm on this ground as well. The plaintiff relies on two cases, Russ v. Ratliff, 538 F.2d 799 (8th Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977), and Clark v. Ziedonis, 513 F.2d 79 (7th Cir. 1975), to establish that the use of deadly force is only justified when an officer needs it for self defense, or to control a prisoner, or when such force is necessary to effect an arrest. As the subsequent jury verdict would indicate, reasonable jurors could in fact have placed a different interpretation on the evidence, and would have been justified in believing that the display of a firearm in the circumstances was not inappropriate and that it fired by accident.
 
 
 26
 The plaintiff's next objection is that the court erred by giving instruction number 24.[1] The plaintiff objected to the instruction at the trial on two grounds: first, that it "does not make clear that the violation of the rights of the decedent could take place by the reckless and careless manner in which the defendant Blake conducted his activities," and second, that the last two paragraphs "concern themselves with negligence or lack thereof on the part of the police officers. This issue of negligence has not been joined in this case, is beyond the scope of the pleadings and the issues, and should not be read to the jury."
 
 
 27
 We are not persuaded by the plaintiff's first objection, which asserts that the instruction as given would require that the defendant "be guilty of first degree murder before you would be justified in finding him guilty of violating the decedent's constitutional rights," and thus that the plaintiff was not allowed to instruct the jury on recklessness. The plaintiff relies on Kerr v. City of Chicago, 424 F.2d 1134, 1140 (7th Cir.), cert. denied sub nom. Mohan v. Kerr, 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970), to establish that no specific intent or purpose to deprive the plaintiff of his rights is required. While this is a perfectly valid statement of the law, Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), it ignores the fact that the trial court's instruction here properly went on to state that liability could be premised on the basis of the defendant's "callous disregard for the consequences." This may not be a model or ideal recklessness instruction; however we find it an adequate and understandable formulation of the recklessness standard on which the plaintiff premised his case. See Beard v. Mitchell, 604 F.2d 485, 494 (7th Cir. 1979) ("conscious disregard" definition of recklessness was not prejudicial error).[2] Furthermore, the plaintiff had a full opportunity to explain his theory of the case to the jury at closing argument, and used that opportunity to elaborate on the "callous disregard" formulation of the recklessness theory, as contained in the court's instruction as actually given. See Alloy International Co. v. Hoover NSK Bearing Co., 635 F.2d 1222, 1226-27 (7th Cir. 1980); Beard, 604 F.2d at 493 n.8.
 
 
 28
 The plaintiff's second objection to instruction 24, that it injected the issue of negligence into the case and thereby confused the jury is similarly without merit. The cited language could have had no effect other than precisely the opposite of what the plaintiff now contends, for it explicitly removes the issue of negligence from jury consideration.[3] We note that a copy of the instructions was given to the jury to consider in their deliberations and that the trial judge admonished the jury to refer to the written instructions if they did not remember the court's oral recitation. It is thus implausible in the extreme that this language could have had the precisely opposite effect from its clear import, and we will not find it reversible error in the absence of a showing of prejudice.
 
 
 29
 The plaintiff also contends that the court erred by giving instruction number 14 to the jury. That instruction listed certain traffic laws of the State of Indiana which the decedent was alleged to have broken. We find no merit in the contention that the giving of these instructions either confused the jury or prejudiced the plaintiff by implying that if the decedent had violated traffic laws recovery would be foreclosed. The issue of the validity of the high-speed chase had been placed squarely in issue by the plaintiff's theory of the case, and the cited laws were relevant to determination of whether the defendant was acting improperly in chasing the decedent. We find no prejudice or confusion in the instruction given. See, e. g., Cavendish v. Sunoco Service, Inc., 451 F.2d 1360, 1367 (7th Cir. 1971).
 
 
 30
 The plaintiff also contends that the court erred by refusing to give plaintiff's instructions numbers 1 to 26. Fed.R.Civ.P. 51 requires that objections to the refusal to give instructions must be made before the jury retires to consider its verdict, and that the grounds for objection be stated with specificity. The plaintiff's blanket objection, without stated grounds, made after the jury had retired, must fall on both prongs of the Rule 51 test, and the trial court properly rejected it. See Durant v. Surety Homes Corp., 582 F.2d 1081, 1086 (7th Cir. 1978).
 
 
 31
 The plaintiff's next assignment of error is that the trial court erred by failing to excuse for cause a prospective juror who had, as a bank trust officer, worked prior to his retirement with other attorneys who were members of the firm which represented all but two of the defendants, including Blake. A trial court had broad discretion in impaneling a jury, Dennis v. United States, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950), and therefore our review is limited to the determination of whether there was an abuse of that discretion. The trial court vigorously and thoroughly questioned the prospective juror and found to its satisfaction that there was no potential for prejudice. The mere fact that a juror has had some contact or acquaintance with a member of a firm is not a per se basis for exclusion, and the court was within the limits of its discretion in seating the challenged juror. Peerless Insurance Co. v. Schnauder, 290 F.2d 607, 710 (5th Cir.), cert. denied, 368 U.S. 830, 82 S.Ct. 52, 7 L.Ed.2d 33 (1961); see Lane v. United States, 321 F.2d 573 (5th Cir. 1963), cert. denied, 377 U.S. 936, 84 S.Ct. 1340, 12 L.Ed.2d 299 (1964).
 
 
 32
 The plaintiff also contends that the trial court erred in excluding evidence relating to the paternity of the decedent's illegitimate child, and by refusing an instruction on punitive damages. In light of our ruling above on liability, we need reach neither of these questions, both of which relate solely to the issue of damages.
 
 V.
 
 33
 Finally, the plaintiff seeks the award of costs and attorney's fees under 42 U.S.C. § 1988, which by its terms allows the prevailing party in a proceeding to enforce 42 U.S.C. § 1983 a reasonable attorney's fee as part of the cost. Because the plaintiff has not prevailed in the trial court or on appeal such an award would be inappropriate and is denied.
 
 VI.
 
 34
 The court has examined such other arguments as made by the plaintiff and finds them without merit. Therefore, and in accord with the foregoing reasons, the judgment is affirmed.
 
 
 35
 FAIRCHILD, Circuit Judge, concurring.
 
 
 36
 I join in the court's opinion except as to Part III.
 
 
 37
 The district court properly dismissed the Indianapolis Police Department and the City of Indianapolis as defendants because of plaintiff's failure to offer evidence showing that Blake was acting pursuant to any policy or custom of the city or department when his gun discharged. Regardless of whether naming Blake in his official capacity as a defendant would serve to plead an action against the department or city, as suggested by Monell v. Department of Social Services, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2035 n.55, 56 L.Ed.2d 611 (1976), in this case naming Blake in his official capacity is surplusage and meaningless because the city and department were also named as defendants. Because the dismissal of the city and department were proper, the dismissal of Blake in his official capacity had no additional effect and was not improper.
 
 
 
 [1]
 Instruction 24 was given as follows:
 INSTRUCTION NO. 24
 The violation of a person's civil rights by wrongfully and illegally shooting and killing him as charged by the plaintiff's complaint as amended involves an intentional act by a person or persons to violate those civil rights; that is in this case, that a police officer's act which resulted in the death of Byron Richardson must have been intentional or motivated by maliciousness or by a callous disregard for the consequences.
 In determining whether or not a charged police officer was guilty of an intentional, malicious or callous deprivation of Byron Richardson's civil rights by intentionally or purposefully shooting at him or intentionally and purposefully killing him, you must consider the then existing circumstances taking into account the acts or actions, demeanor and manner and conduct of Byron Richardson and of every person leading up to and immediately prior to the firing of defendant Blake's service revolver and whether there then existed any intent of any person of intentionally or purposefully shooting or killing Byron Richardson.
 If you should find and believe from a preponderance of the evidence that the shooting and/or killing of Byron Richardson by defendant Blake was unintended, and was in fact accidental, that finding by you would warrant your finding for defendant.
 The mere fact that you may feel or believe that one or more of the police officers was negligent in his handling of the stopping and arrest of Byron Richardson would not permit you to find for the plaintiff and against a defendant.
 Therefore, you may not determine a verdict for the plaintiff for the death of Byron Richardson under the evidence in this case based upon the legal theory of negligence since it is not an issue for your consideration and negligence does not support the complaint's theory of willful misconduct.
 
 
 [2]
 Similarly, therefore, it was not error for the court to reject the plaintiff's proffered instruction Number 21, which read:
 The fact that the defendants had no specific intent or purpose to deprive plaintiff's decedent, Byron Levell Richardson, of his constitutional rights will not absolve them from liability if they did in fact deprive him of those rights.
 Because we find that instruction 24 properly instructed the jury on the substance of the plaintiff's recklessness theory, we find no error in the refusal to give this instruction. Brandes v. Burbank, 613 F.2d 658, 668-69 (7th Cir. 1980).
 
 
 [3]
 As the plaintiff conceded in his brief and at oral argument, this was not a case where negligence was pleaded or proved, and thus we need not reach any questions presented by Parratt v. Taylor, --- U.S. ----, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)