**August SMITH, Plaintiff–Appellant,**

**v.**

**CITY OF JOLIET, a Municipal corporation, Defendant–Appellee.**

**No. 91–1489.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1991.

Decided May 28, 1992.

Donald X. Murphy (argued), Chicago, Ill., for plaintiff-appellant.

Thomas A. Thanas (argued), Patricia W. Supergan, Jeffrey S. Plyman, Kevin Cummings, Corp. Counsel, City of Joliet, Joliet, Ill., and Linda Haviland, for defendant-appellee.

Before POSNER, COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

August Smith sued the City of Joliet, Illinois ("Joliet" or "the City") pursuant to 42 U.S.C. § 1983 alleging that it caused two of its police officers to violate his

rights under the fourth and fourteenth amendments to the United States Constitution. The district court granted the City's motion for summary judgment. We affirm.

## I.

The incident giving rise to Smith's lawsuit occurred outside his Joliet home at around 7 p.m. on February 21, 1986. Smith had just parked his car in the small parking lot fronting his home when he decided to run the engine for a few minutes to make it easier to start the next morning. Because of a faulty hinge, it took Smith two or three minutes to open his driver's side door and reenter the car. After switching on the ignition, Smith sat in the driver's seat with the engine running.

A few moments later, a second car pulled into Smith's parking lot and stopped in front of his car. Two men exited the second car. They were Arthur Huffstutler and Robert Kerwin, on-duty plainclothes Joliet police officers. In their depositions, the police officers stated that they stopped to investigate because officer Kerwin spotted Smith struggling with his car door and suspected a car theft in progress.

Smith's account of what happened next differs dramatically from the officers'. Since we are reviewing a summary judgment entered against Smith, we will accept as true his account of disputed facts. According to Smith, one of the two officers "snatched" him from inside his car, "slung" him up against the car, told him to put his hands on his car, pointed a gun at the back of his head, "jammed" Smith's chest against the car roof, and "poked" the gun into his ribs. Meanwhile, the other officer searched the inside of Smith's car. Smith claims that after about 20 minutes of this treatment, his son arrived in a car, and the two police officers got into their car and drove off.

Smith argued in the district court that Kerwin and Huffstutler used excessive force against him during the investigatory stop and search in violation of his constitutional rights. He also argued that his encounter with the police was part of a pattern of use of excessive force by Joliet police officers. This pattern, according to Smith, was evidence of the Joliet police department's "custom of condoning or ignoring excessive force incidents," its "policy ... to actually foster and approve the use of excessive force," and its "deliberate indifference" to police use of excessive force.

After several months of discovery, the district court granted the City's motion for summary judgment, ruling that (1) Smith's account of his treatment by the two police officers did not rise to the level of an unconstitutional use of excessive force and (2) Smith presented no evidence of an unconstitutional City policy or custom which could have caused the officers to use excessive force.

## II.

We review *de novo* a district court's grant of summary judgment. *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir. 1990). Motions for summary judgment should be granted if the pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The record and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. *Renovitch*, 905 F.2d at 1044. However,

"Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."

*Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). "A genuine issue of material fact exists only where there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party." *Id.* at 1044. (citation omitted).

### III.

■ With this standard of review in mind, we turn now to the substantive law governing the appellant's claim. Because Smith sued only the City, and not Kerwin and Huffstutler individually, he was required to prove two things to make out his claim: (1) that the police officers used excessive force against him in violation of his constitutional rights *and* (2) that a City policy or custom caused their unconstitutional behavior. *Strauss v. City of Chicago,* 760 F.2d 765, 766–767 (7th Cir.1985). Because we hold that Smith failed to establish evidence of a City policy or custom which could have caused a constitutional violation, we need not review the district court's conclusion that Smith suffered no constitutionally cognizable injury.

■ Local governing bodies, like the City of Joliet,

"can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, ... local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. Under this doctrine, local governing bodies can be held liable under § 1983 if their method of training their police is so inadequate that it amounts to a "policy" of "deliberate indifference to the rights of persons with whom the police come into contact." *Graham v. Sauk Prairie Police Commission,* 915 F.2d 1085, 1100 (7th Cir. 1990) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). This is a "stringent standard for plaintiffs to satisfy in order to establish municipal liability" and is not met by a showing that police training was grossly negligent or reckless. *Id.*

■ Under controlling precedent, Smith could clear the summary judgment hurdle in his suit against the City only if he presented sufficient evidence to allow a jury to conclude that some City policy or custom, including a "policy" of deliberately inadequate training, caused the two officers to use excessive force against him. Our review of the record persuades us that the "evidence" Smith presented in the district court was woefully inadequate to meet this burden. To support his claim, Smith principally relied on nine instances, stretching from 1963–1988, of what he alleges are examples of the use of excessive force by Joliet police officers. Smith's accounts of these incidents are almost exclusively based on hearsay and are unsupported by affidavits or depositions of any kind; they are simply bald allegations. Smith purported to support one of these allegations—that a man named Mark Bew was the victim of the use of excessive force by Joliet police in December, 1985—by citing as his source a federal "court file." This reliance was misplaced since the case, *Bew v. City of Joliet,* Northern District of Illinois, Eastern Division, No. 89 C 9384, was dismissed for want of prosecution in January, 1991. Smith also offered copies of several police reports to support his allegations, but these reports, although providing accounts of the use of force by police officers, do not describe anything approaching the unconstitutional use of excessive force.

Smith's other efforts to resist summary judgment were also properly rejected by the district court. Smith attaches enormous importance to the fact that the Joliet police department authorized the use by its officers of "numchucks" from 1980–1987. Appellant apparently believes that this is

clear evidence of an unconstitutional policy or custom. Standing alone, that authorization proves nothing, especially since "numchuks" were not involved in any of Smith's examples of the use of excessive force, including his own. Similarly, the fact that a police official stated in his deposition that he could not remember if there were any excessive force complaints filed with the department from 1980–86 does not by itself create a question of material fact as to constitutionally inadequate training when Smith himself has not submitted any competent evidence of any complaints being filed.

### IV.

Our review of the record thus leads us to agree with the district court that "Smith has brought no competent evidence revealing a policy or practice on the part of the City of Joliet that violates the Constitution." Accordingly, the district court's entry of summary judgment against the appellant is AFFIRMED.