**Robert S. DIEBITZ, Plaintiff,**

v.

**Philip ARREOLA, Carlos Negron, Paul Popa, Audrey Rademan, Unknown Milwaukee Police Officers, and City of Milwaukee, Defendants.**

**No. 91–C–1338.**

United States District Court, E.D. Wisconsin.

Sept. 28, 1993.

Pikofsky, Campenni & Pigatti by Seymour Pikofsky, Milwaukee, WI, for plaintiff.

Grant F. Langley, City Atty. by Jan A. Smokowicz, Asst. City Atty., Milwaukee, WI, for defendant.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

On August 2, 1993, after a three day bench trial, judgment was entered in the above-captioned 42 U.S.C. § 1983 action in favor of Robert S. Diebitz on his excessive force claim against Audrey Rademan [hereinafter referred to as Audrey Warren due to her recent marriage], in her individual capacity, in the amount of $8,000, plus costs. Pursuant to 42 U.S.C. § 1988, the judgment added an award of $8,000 in attorneys fees to Mr. Diebitz. Presently before the court is Ms. Warren's post-trial "Motion to Amend Judgment" brought pursuant to Rules 52(b) and 59(e), Federal Rules of Civil Procedure. Her motion will be denied.

## I. BACKGROUND

On November 27, 1991, the plaintiff, Mr. Diebitz, commenced this civil rights action in Milwaukee county circuit court against the following defendants: (1) Philip Arreola (2) Carlos Negron, (3) Paul Popa, (4) Audrey Warren, (5) unknown Milwaukee police officers, and (6) the city of Milwaukee. Mr. Arreola was the Milwaukee chief of police at the time of the events complained about by Mr. Diebitz in his complaint. Mr. Diebitz sued him only in his official capacity. Mr. Negron, Mr. Popa, and Ms. Warren were Milwaukee police officers during the time

period relevant to the allegations contained in Mr. Diebitz's complaint; each of them was sued individually and in his or her official capacity.

In his complaint, the plaintiff alleged that the defendants violated his civil rights in contravention of 42 U.S.C. § 1983 in two different ways. First, he alleged that the defendants arrested him without probable cause on February 21, 1991. *See, e.g., United States v. Colonia,* 870 F.2d 1319, 1322 (7th Cir.1989) (noting that "[t]he constitutional validity of a warrantless arrest ... depends upon probable cause to effectuate the arrest under the totality of circumstances"). Second, he alleged that the defendants used excessive force against him during the course of his February 21, 1991, arrest. *See, e.g., Classon v. Krautkramer,* 451 F.Supp. 12, 13 (E.D.Wis.1977) (noting that "the use of excessive force in making an arrest is actionable under § 1983 and under the Fourth Amendment as incorporated in the Fourteenth Amendment").

With respect to his excessive force claims, the plaintiff alleged that an unknown police officer repeatedly kicked him in the head causing "head and facial injuries" after he was pushed to the floor of an elevator in the city jail during the course of his arrest. As a result of the excessive force used against him, the plaintiff alleged that he incurred "substantial personal injury, pain and suffering" entitling him to compensatory and punitive damages, costs, and attorneys fees.

On December 16, 1991, the defendants removed this action to federal court pursuant to 28 U.S.C. § 1441(a) and (b). The case was reassigned to this court for trial from another branch of this court. The bench trial of this action was tried over three days: July 27–28, 1993, and August 2, 1993.

At trial, after the plaintiff rested, the defendants moved, pursuant to Rule 52(c), Federal Rules of Civil Procedure, for a judgment on partial findings on all claims against all defendants. The court granted this motion in part. Specifically, the court dismissed the plaintiff's probable cause claims against all defendants. Furthermore, the court dismissed Mr. Diebitz's excessive force claims against Chief Arreola and the city of Milwau-

kee because the plaintiff failed to prove that the alleged excessive force used against him was pursuant to a police department, or city, policy or custom. *See, e.g., Smith v. City of Joliet,* 965 F.2d 235, 237 (7th Cir.1992). In all other respects, the court denied the defendants' Rule 52(c) motion.

After the close of evidence and the presentation of closing arguments, the court orally stated its findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure. In so doing, the court summarily dismissed several of the plaintiff's remaining claims. These claims included the plaintiff's excessive force claim against Officer Negron; the parties stipulated to his dismissal from the action. The court also dismissed Mr. Diebitz's excessive force claims against the defendants identified as unknown Milwaukee police officers because the evidence failed to identify such officers at trial. In addition, the court dismissed the plaintiff's excessive force claims against Officers Popa and Warren in their *official* capacities because the plaintiff failed to prove that the alleged excessive force used by them was pursuant to a police department, or city, policy or custom. *See, e.g., Smith,* 965 F.2d at 237.

After disposing of the above claims, I stated, in considerable detail, my findings of fact and conclusions of law with respect to the plaintiff's two remaining claims. Those two claims were: (1) the plaintiff's excessive force claim against Officer Popa in his *individual* capacity, and (2) the plaintiff's excessive force claim against Officer Warren in her *individual* capacity. What follows is a brief summary, but by no means verbatim account, except where noted, of some of my oral findings of fact and conclusions of law with respect to these two claims.

On February 20, 1991, at approximately 9:30 p.m., Mr. Diebitz and his friend Joseph Rosetto drove from Mr. Diebitz's home, located at 2109 North 55th Street in Milwaukee, to a bar called the "Main Gate." At that bar, Mr. Diebitz and Mr. Rosetto shot pool and drank beer from approximately 10:00 p.m. until 1:15 a.m. on February 21, 1991. They then left the "Main Gate" in Mr. Roset-

to's car. Mr. Rosetto was driving, and Mr. Diebitz was in the front passenger seat. Their destination was Mr. Diebitz's home.

During their drive home, Mr. Rosetto and Mr. Diebitz found that they were being followed by a police squad. They made several evasive maneuvers in an effort to elude the police squad following them. The squad tailing them was driven by Sergeant Chester Ulickey of the Milwaukee police department. Mr. Rosetto ultimately pulled his car over in the eastbound lane of West Lloyd Street between 56th and 57th street—a few blocks from Mr. Diebitz's home. Both Mr. Rosetto and the plaintiff exited Mr. Rosetto's automobile. They began walking in separate directions.

Sergeant Ulickey ultimately apprehended Mr. Rosetto near the location where Mr. Rosetto had pulled his car over on Lloyd Street. Mr. Rosetto was subsequently placed under arrest because of an outstanding warrant for possession of a concealed weapon.

Sergeant Ulickey had noticed that another person had walked away from Mr. Rosetto's car, and therefore he called for backup over his police radio. Two police squads from the Milwaukee police department responded— Squad #39 consisting of Officers Negron and Warren and Squad #93A made up of Officers Sholler and Popa.

Mr. Diebitz was ultimately confronted by Officer Warren in an alley north of Lloyd Street between 56th and 57th Street. At that location, Officer Warren, with the assistance of Officer Popa, who arrived moments later, placed Mr. Diebitz under arrest for prowling.

Both Mr. Rosetto and Mr. Diebitz were transported to the city jail in Squad #93A— a police van used to transport arrestees. Both men shouted loud and profane remarks, tried to escape from their handcuffs, and kicked the sides and doors of the police van. However, Mr. Diebitz did not suffer any injuries to himself during his trip to the city jail.

Officers Sholler and Popa had to stop their van twice to deal with the combative behavior of Mr. Rosetto and Mr. Diebitz. At the second stop, Officers Sholler and Popa called for back-up to assist them in recuffing the arrestees. Officers Negron and Warren in Squad #39 responded and subsequently followed Squad #93A to the city jail.

Upon arrival at the city jail, Officer Warren and other unidentified officers, but not Officer Popa:

> entered the elevator ... [in] ... the garage at the city jail and were taken to the fifth floor. And in the elevator because of Mr. Diebitz's continued resistance to his arrest, Officer Rademan [Warren] and the other officers who were in the elevator did what the testimony identifies as "decentralized" the plaintiff, which I take it is a police term for ... causing the arrestee to be put on the floor on his stomach face down. And the record satisfies me that at that time Mr. Diebitz was kicked several times in the face by various unknown officers causing the injuries he now complains about. The hospital report (Exhibit six) and the photographs (Plaintiff's Exhibits one to five) persuade the court that serious injuries were inflicted upon the plaintiff and that Mr. Diebitz has met his burden of proving that by the credibility of his own testimony, coupled with the court's evaluation of the exhibits just alluded to which reflect injuries which, in my opinion, could not reasonably have been caused in the manner that the defendants have urged upon the court.

Transcription by the court of August 2, 1993, electronic court reporting of the court's oral findings of fact and conclusions of law [hereinafter *August 2, 1993, Findings*].

Mr. Diebitz did not suffer any further injuries after he left the elevator on the fifth floor of the city jail. He spent the night in a cell at the city jail until his release on the morning of February 21, 1991. His girlfriend picked him up at which time she observed his two black and blue eyes and swollen forehead. He visited the West Allis Memorial Hospital later that day for treatment of his injuries.

Based on the above findings of fact the court proceeded to conclude that:

> [T]here were two or three or four [police officers in the jail elevator] present who

could have contained ... [Mr. Diebitz's] ... aggressions, both verbal and physical, without the brutalizing that was perpetrated. There has been no adequate proof that Officer Popa engaged in excessive force. His denial is entirely credible, and the proof to the contrary is not persuasive. So Mr. Popa should be relieved of liability. But the same cannot be said of Officer Rademan, now Warren, who was in the elevator by her own acknowledgment when the plaintiff received his injuries. And at a minimum, she failed to prevent her fellow officers, whom she failed to identify, from using excessive force against Mr. Diebitz. On the other hand, *if she participated in the kicking and beating of the plaintiff, then she'd be directly liable.*

*August 2, 1993, Findings* (emphasis added).

Thus, pursuant to Rule 52(a), Federal Rules of Civil Procedure, the court dismissed Mr. Diebitz's excessive force claim against Officer Popa in his individual capacity but found Officer Warren liable to the plaintiff on his excessive force claim against her in her individual capacity. The court awarded Mr. Diebitz $8,000 in compensatory damages, with costs, plus $8,000 in attorneys fees pursuant to 42 U.S.C. § 1988. Judgment was entered on August 2, 1993, in accordance with the court's findings of fact and conclusions of law.

On August 12, 1993, Officer Warren filed her "Motion to Amend Judgment." In her motion, Officer Warren requests this court to amend its findings of fact and conclusions of law, pursuant to Rule 52(b), Federal Rules of Civil Procedure, and to enter an amended judgment, pursuant to Rule 59(e), Federal Rules of Civil Procedure, dismissing Mr. Diebitz's excessive force claim against her in her individual capacity. Officer Warren's motion will be denied for the reasons that follow.

## II. ANALYSIS

Officer Warren has brought her "Motion to Amend Judgment" pursuant to Rules 52(b) and 59(e), Federal Rules of Civil Procedure. Rule 52(b), provides, in part, that "[u]pon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." Rule 59(e) states that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

A Rule 52(b) motion to amend findings by the court "is not intended to allow the parties to relitigate old issues, to advance new theories, or to rehear the merits of a case." *Renfro v. City of Emporia, Kansas,* 732 F.Supp. 1116, 1117 (D.Kan.1990). However, recognized grounds for such a motion include "manifest error of fact or law" by the trial court, "newly discovered evidence," or "a change in the law." *Id.* See also *Nat'l Metal Finishing v. Barclaysamerican,* 899 F.2d 119, 123 (1st Cir.1990); *Lyons v. Jefferson Bank & Trust,* 793 F.Supp. 989, 991 (D.Colo.1992), *aff'd in part, rev'd in part,* 994 F.2d 716 (10th Cir.1993); *U.S. v. Carolina E. Chem. Co.,* 639 F.Supp. 1420, 1423 (D.S.C. 1986); *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976). A party may move under Rule 52(b) "even if the amended or additional findings would effectively reverse the judgment." *Lyons,* 793 F.Supp. at 991. See also *Barclaysamerican,* 899 F.2d at 123. Because of this result, Rule 52(b) motions are often accompanied by, or brought simultaneously with, a Rule 59(e) motion to amend the judgment.

Much like Rule 52(b) motions, Rule 59(e) motions "are not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories." *Evans,* 416 F.Supp. at 244. See also *Barclaysamerican,* 899 F.2d at 123. Furthermore, a court may alter or amend a judgment pursuant to Rule 59(e) only if the movant "clearly establish[es] either a manifest error of law or fact" or "present[s] newly discovered evidence." *Fed. Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986). See also *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990); *Leigh v. Engle,* 723 F.Supp. 1272, 1273 (N.D.Ill.1989); *Nat'l Resources Defense Council v. U.S. E.P.A.,* 705 F.Supp. 698, 702 (D.D.C.1989). The decision whether to alter or amend a judgment pursuant to Rule 59(e) is "left to the sound discre-

tion of the [trial] court." *Leigh*, 723 F.Supp. at 1273.

Officer Warren asserts two primary arguments in support of her "Motion to Amend Judgment." In both arguments, Officer Warren is clearly attempting to persuade this court that it committed "a manifest error of law or fact" thus requiring this court to amend its findings, pursuant to Rule 52(b), and to amend its judgment, pursuant to Rule 59(e), so as to relieve her of liability to the plaintiff. *See Renfro*, 732 F.Supp. at 1117; *Meyer*, 781 F.2d at 1268.

■ First, Officer Warren argues that there is no evidence in the record to support the court's finding that *she* kicked the plaintiff in the head after he had been decentralized on the floor of the jail elevator. This argument is easily disposed of, and it provides no basis for amending the findings or the judgment in this action; this is because the court *did not* rest its decision in favor of the plaintiff on a finding that Officer Warren was the actual officer who kicked Mr. Diebitz in the head causing his injuries. *See August 2, 1993, Findings* ("On the other hand, *if* she [Officer Warren] participated in the kicking and beating of the plaintiff, then she'd be directly liable.") (emphasis added).

In other words, the court agrees with Officer Warren that the record does not adequately support a finding by a preponderance of the evidence that she inflicted the blows that caused Mr. Diebitz's injuries. Accordingly, the court did not find Officer Warren liable to Mr. Diebitz under a "direct personal responsibility" theory. *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981). Instead, the court found her liable to the plaintiff because the plaintiff was her "collar," and she was present in the jail elevator, where at that time Mr. Diebitz incurred his injuries, and she failed even to attempt to protect Mr. Diebitz from the beating he suffered. *See August 2, 1993, Findings* ("[A]t a minimum, she failed to prevent her fellow officers, whom she failed to identify, from using excessive force against Mr. Diebitz."). *See also Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982) (holding that a failure to act is a basis for 42 U.S.C. § 1983 liability).

■ Officer Warren also contends that the evidence introduced at trial does not justify the court's finding just alluded to above, namely, that she violated the plaintiff's civil rights by failing at least to attempt to prevent her fellow officers from using excessive force against Mr. Diebitz in the jail elevator. As to this latter theory, she first argues that "[t]here has been no evidence presented to this [c]ourt by either side that Officer Warren was aware that any officer was kicking the plaintiff in the elevator." Defendant's Brief at 7. Presumably flowing from this argument is the conclusion that she could not intervene to prevent blows that she did not observe, and therefore, she should be relieved of all liability. I find no support in the record for Officer Warren's position.

In my opinion, Mr. Diebitz's testimony that he was kicked in the face and consequently injured by unknown officers in the jail elevator was entirely credible. Therefore, the court found, as a matter of fact, that he incurred his injuries while in the jail elevator. On the other hand, Officer Warren acknowledged that she was in the jail elevator with Mr. Diebitz, *and* she testified that no beating of him occurred in the elevator. Consequently, I now find Officer Warren's posttrial argument that she was not "aware" of the infliction of blows on the plaintiff in the jail elevator (which, by the way, is inconsistent with her *affirmative and unequivocal* trial testimony that no beating occurred in the elevator to the extent that such testimony implies she was "aware" of all activity at all times in the jail elevator) to lack credibility totally because in a confined elevator space it would not be reasonable, in my opinion, to fail to have observed the infliction of the kind of injuries sustained by the plaintiff. Thus, Officer Warren's argument that she was not aware that the plaintiff was being kicked does not provide a basis for amending the findings or judgment in this action so as to relieve her of liability to Mr. Diebitz.

■ Officer Warren presents one other alternative argument attacking my conclusion that she is liable to Mr. Diebitz for failing to act to protect him while she was escorting him in the jail elevator. Specifical-

ly, she contends that there is no evidence in the record that she physically had the time or opportunity to prevent, or to attempt to prevent, the beating of the plaintiff by her colleagues in the jail elevator. *See, e.g., Richardson v. City of Indianapolis,* 658 F.2d 494, 500 (7th Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982); *Russ v. Ratliff,* 538 F.2d 799, 805 (8th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977).

To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. *Duckworth,* 644 F.2d at 655. However, the personal responsibility requirement is satisfied if the official "acts or *fails to act* with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Lash,* 687 F.2d at 1005 (emphasis added). *See also Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984).

Most importantly, in the context of excessive force police brutality cases brought pursuant to 42 U.S.C. § 1983, "it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke,* 466 F.2d 6, 10 (7th Cir.1972). *See also Archie v. City of Racine,* 847 F.2d 1211, 1222 (7th Cir.1988) (citing *Byrd* and noting that "if one police officer starts beating a suspect without cause, the state (through other officers) has a duty to rescue the suspect from this aggression"), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); *Czajkowski v. City of Chicago,* 810 F.Supp. 1428, 1438 (N.D.Ill.1992) (applying *Byrd* ).

At trial, Officer Warren emphatically denied the beating of the plaintiff ever occurred yet, coincidentally, she failed to identify her colleagues in the jail elevator, although her recollection of many other details of the events of February 20–21, 1991, were remarkably clear. By adopting such a position, she effectively precluded herself from testifying (and in fact she *did not* so testify) that she did not have an opportunity to prevent, or attempt to prevent, the beating of Mr. Diebitz.

As the plaintiff cogently argues, Officer Warren cannot now change her testimony post-trial, so as to relieve herself of liability to the plaintiff, and claim that she did not have an opportunity to protect the plaintiff from a beating that at trial she insisted never occurred. Such a post-trial argument is fundamentally inconsistent with her trial testimony and, in my opinion, is impermissible. *See, e.g., Renfro,* 732 F.Supp. at 1117 ("A Rule 52 motion for the court to alter or amend its findings is not intended to allow the parties to ... advance new theories...."); *Evans,* 416 F.Supp. at 244 (noting that Rule 59(e) motions "are not intended to allow the parties to present the case under new theories").

Perhaps most importantly, even if I were to consider Officer Warren's post-trial assertions that she did not have an opportunity to protect Mr. Diebitz in the jail elevator, I still would not grant her "Motion to Amend Judgment" because such a position is untenable in my opinion. The evidence adduced at trial suggests that the elevator ride from the jail garage to the fifth floor of the jail lasted between 30 and 60 seconds. I believe that Officer Warren would have had an ample opportunity, and more than enough time, to make some type of effort to protect the plaintiff, had she chosen to do so, even if it was as small of a gesture as shouting at her fellow officers to stop beating the plaintiff. Thus, in all respects, I find no merit to Officer Warren's final argument that she did not have an opportunity to protect the plaintiff from her fellow officers.

The photographs of Mr. Diebitz (plaintiff's exhibits one to five) reflect a beating that was quite brutal. Apparently his wounds healed well because they were not visible at trial, and because his counsel, in closing argument, acknowledged that Mr. Diebitz had no medical bills and requested an award of $6,000 to $8,000 for his injuries.

Since Officer Warren has failed in all of her post-trial arguments to demonstrate "a manifest error of law or fact" in the court's oral decision in favor of the plaintiff, this court will not amend its findings and judgment to relieve her of liability to Mr. Diebitz.

## ORDER

Therefore, IT IS ORDERED that Officer Warren's "Motion to Amend Judgment" be and hereby is denied.